UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| GLENN FORSYTH WOOD,<br><br>                         Petitioner,<br><br>        v.<br><br>MELISSA RENEE WOOD,<br><br>                         Respondent. | NO:  13-CV-3046-TOR<br><br>TEMPORARY RESTRAINING ORDER<br><br>and<br><br>ORDER TO SHOW CAUSE |

BEFORE THE COURT is Petitioner's *Ex Parte* Request for Expedited Consideration of Verified Petition for Return of Child to the United Kingdom and Issuance of Show Cause Order (ECF No. 3).  Petitioner is represented by Andrew A. Guy.  The Court has considered the motion and pleadings and is fully informed.

BACKGROUND

Petitioner Glenn Forsyth Wood ("Petitioner") seeks the return of his minor child, LPBW, to the child's home country of the United Kingdom under the Convention  on the Civil Aspects of International Child Abduction ("Hague

TEMPORARY RESTRAINING ORDER and ORDER TO SHOW CAUSE ~ 1

Convention") and the International Child Abduction Remedies Act ("ICARA").

Petitioner alleges that LPBW has been wrongfully retained in the United States by

his mother, Respondent Melissa Renee Wood ("Respondent"), and is currently

residing with Respondent in Moxee, Washington.  In the instant motion, Petitioner

requests an order (1) temporarily restraining Respondent from removing LPBW

from this Court's jurisdiction; (2) requiring Respondent to deposit LPBW's

passport and other travel documents with the Court; and (3) directing Respondent

to appear for a show cause hearing.  Fearing that Respondent will attempt to

remove the child from the Eastern District of Washington if given advance notice

of these proceedings, Petitioner has filed the instant motion *ex parte*.

## FACTS

The following facts are drawn from the Petition filed on May 6, 2013 (ECF

No. 1), and are accepted as true for purposes of this motion.  *Mayo v. U.S. Gov't

Printing Office*, 839 F. Supp. 697, 698 n. 1 (N.D. Cal. 1992).  Petitioner is a citizen

of the United Kingdom.  His wife, the Respondent, is a dual citizen of the United

States and the United Kingdom.  Petitioner and Respondent were married in the

United Kingdom in 2003.  In 2007, Respondent gave birth to the couple's child,

LPBW.  The child lived his entire life in the United Kingdom until the events at

issue in this case.

1    In early September of 2012, the parties traveled with LPBW to the United

2    States to visit Respondent's parents in Yakima, Washington.  Respondent and

3    LPBW entered the country on their United States passports; Petitioner entered on

4    his United Kingdom passport with a 90-day tourist visa.  According to Petitioner,

5    the parties intended to remain in Yakima with Respondent's parents indefinitely,

6    provided that Petitioner could secure a green card or otherwise obtain permission

7    to remain in the country beyond his 90-day tourist visa.

8    Shortly after the family arrived in Yakima, Respondent informed Petitioner

9    that she intended to file for divorce.  Respondent further stated that she planned to

10    move in with a former boyfriend and start a new family consisting of herself,

11    LPBW, the former boyfriend, and the former boyfriend's child.  Petitioner

12    understood from this conversation that Respondent had no intention of ever

13    returning to the United Kingdom with LPBW.  Although the parties' relationship

14    became very strained as a result of these revelations, they continued to reside

15    together with LPBW in the Respondent's parents' residence.

16    In effort to give both parties some space, Petitioner traveled from Yakima to

17    Seattle on September 17, 2012.  Three days later, on the date that he was scheduled

18    to return to Yakima, Petitioner received a text message from Respondent which

19    stated that "[LPBW] and I are on the road."  Petitioner returned to Yakima and

20    discovered that Respondent and LPBW had traveled to Idaho and were staying

TEMPORARY RESTRAINING ORDER and ORDER TO SHOW CAUSE ~ 3

1  with one of Respondent's friends at an unknown address.  Approximately one

2  week later, Petitioner was served with a restraining order issued by a court sitting

3  in the State of Idaho.

4          Over the next two weeks, Petitioner tried unsuccessfully to reconcile with

5  Respondent.  In mid-October, Petitioner determined that he could no longer afford

6  to remain in the United States.  Accordingly, Respondent returned to the United

7  Kingdom on October 20, 2012, leaving Respondent and LPBW behind in the

8  United States.  Almost immediately upon his return, Petitioner hired an attorney in

9  the United Kingdom and initiated custody proceedings against Respondent.  These

10  proceedings were ultimately stayed after the court determined that Petitioner

11  intended to pursue relief under the Hague Convention.

12          Petitioner subsequently filed an application with the Central Authority for

13  England and Wales and retained counsel in the United States to assist in securing

14  LPBW's return.  While counsel were preparing the instant Petition, Petitioner

15  learned that Respondent had initiated custody proceedings in Yakima County

16

17

18

19

20

TEMPORARY RESTRAINING ORDER and ORDER TO SHOW CAUSE ~ 4

Superior Court.[1]  Based upon Respondent's initiation of these proceedings in

Yakima County, as well as for other unstated reasons, Petitioner believes that

Respondent and LPBW are currently residing in Moxee, Washington.

DISCUSSION

**A. Return Remedy Under the Hague Convention and ICARA**

The Hague Convention on the Civil Aspects of International Child

Abduction ("Convention"), as implemented by the International Child Abduction

Remedies Act ("ICARA"), 42 U.S.C. § 11601, *et seq.*, mandates that a child

abducted from his or her home country in violation of one parent's 'rights of

custody' be immediately returned so that a custody determination may be made

under the laws of that country.  *Abbott v. Abbott*, --- U.S. ---, 130 S. Ct. 1983, 1987

(2010).  As the Supreme Court explained in *Abbott*,

> The Convention's central operating feature is the return remedy.
> When a child under the age of 16 has been wrongfully removed or
> retained, the country to which the child has been brought must "order
> the return of the child forthwith," unless certain exceptions apply. . . .
> [This] return remedy does not alter the pre-abduction allocation of

---

[1] The Central Authority for the United States has notified the Yakima County

Superior Court of Petitioner's intent to file a Petition for return under the Hague

Convention and has requested that the court stay all proceedings until the Petition

could be ruled upon.  It is unclear whether the proceedings have been stayed.

TEMPORARY RESTRAINING ORDER and ORDER TO SHOW CAUSE ~ 5

custody rights but leaves custodial decisions to the courts of the country of habitual residence.

*Id.* at 1989 (citations omitted).  In other words, a court's role under the Convention and ICARA is not to make an affirmative custody determination, but rather to determine *where* the issue of custody should be litigated.  *See Cuellar v. Joyce*, 596 F.3d 505, 508 (9th Cir. 2010) ("A court that receives a petition under the Hague Convention may not resolve the question of who, as between the parents, is best suited to have custody of the child.  With a few narrow exceptions, the court must return the abducted child to [his or her] country of habitual residence so that the courts of *that* country can determine custody.") (emphasis in original).

A petitioner seeking the return of a child under ICARA must prove by a preponderance of the evidence that the child "was wrongfully removed or retained" within the meaning of the Convention.  42 U.S.C. § 11603(e)(1)(A).  A "wrongful removal or retention" involves a breach of the non-removing parent's "rights of custody," which includes the right to care for the child and determine his or her place of residence.  The right at issue must (1) arise under "the law of the state in which the child was habitually resident immediately before the removal and retention"; (2) have been "actually exercised" at the time of the removal or retention; and (3) relate to a child under the age of sixteen.  If the foregoing elements are proven, the court must "order the return of the child forthwith."

**B. Temporary Restraining Order**

ICARA vests courts of the United States with authority to "take or cause to be taken measures under Federal or State law, as appropriate, to . . . prevent the child's further removal or concealment before the final disposition of [a] petition [for return under the Hague Convention]."  42 U.S.C. § 11604(a).  This authority extends to issuing an *ex parte* temporary restraining order where the requirements of Federal Rule of Civil Procedure 65(b) are satisfied.  *Morgan v. Morgan*, 289 F. Supp. 2d 1067, 1069 (N.D. Iowa 2003.  In taking any preventative measures pursuant to § 11604(a), however, a court must ensure that "the applicable requirements of State law are satisfied."  42 U.S.C. § 11604(b).[2]

In the instant motion, Petitioner requests an order barring respondent from removing LPBW from this Court's jurisdiction pending full adjudication of the Petition.  Given that Petitioner filed his motion without serving a copy on Respondent, the Court will construe this request as a motion for an *ex parte* temporary restraining order ("TRO").  Under Rule 65(b), a party seeking a TRO must establish: (1) a likelihood of success on the merits, (2) a likelihood of irreparable injury if the requested relief is not granted, (3) that a balancing of the

---

[2] In Washington, the applicable law is the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), RCW 26.27.011, *et seq.*

hardships weighs in its favor; and (4) that the requested relief will advance the public interest. *See Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008) (citation omitted). When these elements are satisfied, a court may temporarily enjoin the opposing party from engaging in a specific action pending a hearing to determine whether the restrictions should remain in force in the form of a preliminary injunction.

The Court finds that the issuance of a TRO is appropriate. Petitioner has established a *prima facie* case of wrongful retention under the Hague Convention by alleging that Respondent is holding LPBW, a child under sixteen years of age whose country of habitual residence is the United Kingdom, in the United States without his permission and in violation of his rights of custody under the Law of England and Wales. Petitioner has also established to the Court's satisfaction that Respondent and LPBW are currently residing within the Eastern District of Washington. Accordingly, Petitioner has established a sufficiently high likelihood of success on the merits.

Respondent has also established a sufficiently high likelihood of irreparable injury if the requested relief is not granted. According to the Petition, Respondent has taken LPBW "on the road" through at least four different states in an effort to conceal the child's whereabouts from Petitioner. In light of these allegations, there is reason to believe that Respondent may remove LPBW from this Court's

jurisdiction upon learning of these proceedings if not expressly prohibited from

doing so.  If that occurs, Petitioner will likely experience great difficulty in

locating the child and pursuing the child's safe return to the United Kingdom.  The

Court finds that injunctive relief is necessary to prevent this and other potential

injuries from occurring.  For these same reasons, the Court finds that issuance of

this Order without notice to Respondent is appropriate under Rule 65(b)(2).

A balancing of the hardships also weighs in Respondent's favor.  Prohibiting

Respondent from removing LPBW from the Eastern District of Washington until

she can be heard on the matter is a minimally burdensome condition.  Indeed,

given that Respondent and LPBW appear to have settled in Moxee (at least for the

time being), there is no reason to believe that either Respondent or the child will be

burdened at all.  Conversely, Petitioner faces a substantial hardship if the requested

relief is not granted.  As noted above, Petitioner's ability to obtain effective relief

under the Hague Convention would be seriously jeopardized if Respondent were to

remove the child from this Court's jurisdiction.

Finally, the Court finds that an order barring Respondent from removing

LPBW from this jurisdiction would advance the public interest.  In implementing

the Convention through ICARA, the United States Congress found, *inter alia*, that

"the international abduction . . . of children is harmful to their well-being" and that

persons who engage in such conduct "should not be permitted to obtain custody of

children by virtue of their wrongful removal or retention." 42 U.S.C. §

11601(a)(1), (2).  Granting the requested relief would, at least temporarily, prevent

Respondent from further profiting from her alleged wrongful retention of LPBW in

the United States.  Accordingly, the Court concludes that Petitioner is entitled to an

order temporarily restraining Respondent from removing LPBW from this Court's

jurisdiction subject to the terms set forth below.

**IT IS HEREBY ORDERED:**

1.  Petitioner's *Ex Parte* Request for Expedited Consideration of Verified
    Petition for Return of Child to the United Kingdom and Issuance of Show
    Cause Order (ECF No. 3) is **GRANTED**.

2.  Respondent, Melissa Renee Wood, is prohibited from directly or indirectly
    removing the minor child, LPBW, born in 2007, from the Eastern District of
    Washington, until further order of the Court.  This restriction shall
    automatically expire at midnight on May 22, 2013, unless specifically
    extended by further order of the Court.

3.  Upon a finding that there is no reasonable likelihood of harm to Respondent
    from being wrongfully enjoined, *see Jorgensen v. Cassiday*, 320 F.3d 906,
    919 (9th Cir. 2003), Petitioner shall not be required to give security under
    Rule 65(c).

4. Respondent, Melissa Renee Wood, is **ORDERED** to appear before this Court on **Tuesday, May 14, 2013, at 1:30 p.m. in the Third Floor Courtroom of the William O. Douglas United States Courthouse, 25 South 3rd Street, Yakima, Washington 98901,** to show cause, if any she has, why she should not be prohibited from removing the LPBW from this Court's jurisdiction until this proceeding is concluded.

5. Respondent is further **ORDERED** to produce LPBW's passport and any other identification and/or travel documents at the hearing and to deposit them with the Court for safekeeping until this proceeding is concluded.

6. Petitioner shall arrange for this Order, along with a copy of the Verified Petition and all attached documents, to be personally served upon Respondent at the earliest possible time.  Petitioner shall and file proof of service prior to the hearing.

The District Court Executive is directed to enter this Order and forward a copy to Petitioner.

**DATED** May 8, 2013 at 2:15 p.m.



THOMAS O. RICE
United States District Judge

TEMPORARY RESTRAINING ORDER and ORDER TO SHOW CAUSE ~ 11